834 So.2d 1233 (2002)
Kenneth L. SMITH and Julia Ann Smith
v.
AVONDALE INDUSTRIES, INC. and Entergy Corporation.
No. 02-CA-939.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
Rehearing Denied January 16, 2003.
*1235 Richard Martin, Jr., New Orleans, LA, for Plaintiff-Appellant, Kenneth L. Smith and Julia Ann Smith.
Kenneth P. Carter, Joseph K. West, Margaret Jenkins Savoye, New Orleans, LA, for Defendant-Appellee, Entergy Corporation.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER F. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit, the trial judge found that the presence of defendant's utility pole was not a "cause-in-fact" of the severity of plaintiff's accident and resulting damages. For the following reasons, we affirm.
Facts and Procedural History
Kenneth Larue Smith was an experienced truck driver and President of Simco, Inc., a small trucking company in Kentwood, Louisiana. On September 19, 1996, Smith, who was in good health, was driving a tractor truck pulling a flatbed trailer loaded with several pieces of large equipment, including a strut barrel weighing approximately 49,000 lbs., from Avondale Industries ("Avondale"). He was delivering the equipment, which had been loaded by Avondale employees and secured by Smith, to Amite Foundry in Amite, Louisiana. Smith was traveling westbound on La. Hwy. 18 toward Amite that day, which was clear and dry. He was familiar with this road because he had driven this route numerous times in the past.
Unfortunately, in the course of negotiating a sharp right-to-left curve on the two-lane highway, the tractor overturned onto the passenger side. After the tractor overturned, it skidded along the roadside and struck a utility pole located eight feet from the roadside. When the tractor struck the utility pole, the roof of the tractor was sheared off. Smith was ejected from the tractor's cab.
Although he survived the accident, he was in a prolonged coma as a result of the catastrophic closed-head injury he sustained. Later, it was discovered that he had also suffered a fractured neck, which required surgery. His injuries resulted in complete medical disability.
On June 9, 1997, Smith and his wife, Julia Ann Smith, filed suit against Avondale, State of Louisiana through the Department of Transportation and Development("DOTD"), and Entergy Louisiana, Inc.,("Entergy"). Before trial, Avondale and DOTD settled with plaintiffs and, as a result, plaintiffs dismissed their claims against those defendants. Notably, Entergy did not file any cross-claims.
On August 28, 2001, plaintiffs' claims against Entergy went to trial. After three days of testimony and evidence, the trial judge took the matter under advisement. On February 18, 2002, Smith died from *1236 complications following a heart attack. On March 6, 2002, the trial court ordered Julia Ann Smith, as her husband's legal successor, substituted as party plaintiff in this case.
On April 10, 2002, the trial judge rendered judgment in favor of Entergy, dismissing all claims by plaintiff. In his thorough and articulate written reasons for judgment, the trial judge found that "[p]laintiffs did not satisfy their burden of proving by a preponderance of the evidence that the presence of a utility pole involved in the collision was a cause-in-fact of the enhanced severity of this accident. Moreover, legal causation does not exist under the facts of this case." Finally, he also found that the duty to provide clear recovery areas adjacent to roadways "does not protect against the risk of a vehicle that exits the roadway in such an uncontrollable manner that neither the ability to stop safely nor otherwise regain control of the vehicle is remotely possible." On April 29, 2002, plaintiff filed an appeal, which was granted.
On appeal, plaintiff asserts four assignments of error: the District Court erred in finding that Plaintiffs did not satisfy their burden of proving by a preponderance of the evidence that the presence of the utility pole involved in the collision was a cause-in-fact of the Plaintiffs' damages; the District Court erred in excluding the opinion testimony of Trooper Guidry that the proximity of the utility pole to the road compounded the severity of the accident and was a factor in the severity of the accident; the District Court erred in not finding that Entergy owned [sic] and violated a duty to protect Mr. Smith as a member of the motoring public; and the District Court erred in not entering Judgment and awarding substantial general and special damages to both Plaintiffs, plus costs and legal interest from the date of judicial demand.
The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Boykin v. Louisiana Transit Co., Inc., 96-1932, pp. 8-9 (La.3/4/98), 707 So.2d 1225, 1230 (citing David W. Robertson et al., Cases and Materials on Torts 83-84 (1989)). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. Mathieu v. Imperial Toy Corporation, 94-0952, p. 11 (La.11/30/94), 646 So.2d 318, 326.
Generally, the initial determination in the duty/risk analysis is cause-in-fact. Boykin, 707 So.2d at 1230. Cause-in-fact is a "but for" inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct. Id. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. Id. at 1232, n. 10. To satisfy the substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor in bringing about the complained of harm. Dabog v. Deris, 625 So.2d 492, 493 (La.1993).
*1237 Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder. Theriot v. Lasseigne, 93-2661, p. 5 (La.7/5/94), 640 So.2d 1305, 1310 (citing Cay v. State DOTD, 93-0887 (La.1/14/94), 631 So.2d 393 (La.1994)). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Id. (citing Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990)).
In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La. 1993). Further, on review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221. In sum:
[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
However, while deference must be given to the factfinder's determinations, this court clarified in Ambrose that our purpose in Stobart was not "to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset." Ambrose, 639 So.2d at 221. Recognizing that great deference should be accorded to the factfinder, the court of appeal and this court have a constitutional duty to review facts. Id. To perform its constitutional duty properly, an appellate court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support. Id.
The plaintiffs' theory of causation in this case is that the close proximity of Entergy's utility pole to La. Hwy. 18 transformed an "embarrassing turnover" into a near fatal accident for Smith. Although the plaintiff on appeal concedes that her husband may have been partially responsible for his accident, she still contends that Entergy owed a duty to her husband as a member of the driving public to establish a "clear recovery area" along La. Hwy. 18, which it violated by placing its utility pole within eight feet of the roadway.
We have reviewed the entire record of this case, including the transcript of the three-day bench trial and scores of bound exhibits. Before turning to our discussion of the evidence in the record concerning causation and duty, we note that there is no dispute that Smith, who is now deceased, suffered severe and disabling injuries in this accident. The severity of a plaintiff's injuries, however, does not establish that a defendant's behavior was a cause-in-fact of those injuries. We turn *1238 now to our discussion of the evidence in the record regarding causation of this accident.
At trial, plaintiffs presented, among other witnesses, Larry Spears, an expert in highway safety, who testified that the utility pole did not cause the trailer portion of Smith's truck to flip onto its right side. He admitted that the trailer would have flipped even if the utility pole was not located next to the roadway. Further, there was no testimony that Smith physically contacted the pole. It is clear that the roof of the tractor's cab in which Smith was riding was sheared off by the pole but there was no testimony that the pole injured Smith during the accident.
Moreover, although the plaintiffs contend that the proximity of the utility pole to the roadside exacerbated Smith's injuries, they did not present testimony to that effect at trial. In fact, it is undisputed that Smith was not wearing a seatbelt when his trailer flipped so it is difficult to say that he would not have been ejected from the tractor's cab even if the cab had not struck the utility pole. Further, while plaintiff contends that the trial judge erred in excluding testimony from Trooper Craig Guidry on the basis that he testified outside of his area of expertise, we find that the trial judge, as finder of fact, did not abuse his vast discretion in rejecting Guidry's testimony.
Lastly, plaintiff argues that the trial judge erred in finding that Entergy did not owe a duty to Smith as a member of the motoring public. Here, the trial judge found that the duty to provide clear recovery areas does not protect against the risk that occurred in this accident, which is a vehicle that exited the roadway in such an uncontrollable manner that it would be virtually impossible to stop safely or otherwise regain control of the vehicle. We cannot say that the trial judge erred in this finding.
Under these circumstances, we find that the evidence in the record supports the trial court's finding that the location of the utility pole in this case was not a cause-in-fact of the Smith's accident. The trial court also concluded that Entergy could not have protected Smith from striking the pole, even if the pole had been relocated. We find no manifest error in his determination. Accordingly, for the reasons assigned, the judgment of the trial court rendered in favor of Entergy, dismissing plaintiff's claims, is hereby affirmed. Costs are assessed to appellant.
AFFIRMED.